L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
**KEEHN & ASSOCIATES, APC**
402 W. Broadway, Suite 1210
San Diego, California 92101
Telephone: (619) 400-2200

[Proposed] Attorneys
for Debtor and Debtor-in-Possession
Qualitybuilt.com, a California corporation

## UNITED STATES BANKRUPTCY COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>**QUALITYBUILT.COM,**<br>a California corporation,<br><br>Debtor. | Case No.   09-12113-PB11<br><br>Chapter 11<br><br>***FIRST DAY MOTION* BY DEBTOR FOR ORDER APPROVING ALL PROCEDURES, REQUIREMENTS, AND OTHER PROVISIONS SET FORTH IN SALES PROCEDURE ORDER (EX. 2 TO EXHIBIT COMPENDIUM)**<br><br>Date:     N/A<br>Time:    N/A<br>Dept.:    4<br>Judge:   Hon. Peter W. Bowie |

Qualitybuilt.com ("Debtor"), a California corporation, as debtor and debtor-in-possession, hereby moves the Court for entry of an order approving all bidding procedures, notice requirements, and all other provisions governing the procedure related to the sales transaction, as set forth in the Sales Procedure Order, which can be found at Exhibit 2 of the Exhibit Compendium.

### I. JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157. Venue is proper under 28 U.S.C. §§1408 and 1409.

The statutory bases for the relief requested in this Motion are 11 U.S.C. §§361 and 363 and Bankruptcy Rule 4001.

## II. BACKGROUND

**A.   History of Qualitybuilt.com and Events Leading to Bankruptcy**

Debtor has its origins in certain construction quality metrics that founder Stanley R. Luhr began developing in 1983 after he saw an increase in insurance costs coupled with a decrease in quality. As the program around which he was building the metrics was maturing, Mr. Luhr obtained three patents and obtained several trademarks and copyrights for the business processes he was developing.

Debtor was officially formed in 1998 and became quite popular with builders and insurance companies because it was the first advanced risk consulting firm to specifically quantify the true risk for a construction project and develop methodologies to reduce or eliminate that risk. In 2005, at the peak of the construction boom, Debtor was the largest and most advanced company of its kind in the country, with nearly 200 direct employees and active operations in 33 states. Debtor was named one of the twenty-five "Fasted Growing Companies" and the was the only advanced risk consultant firm to be specifically endorsed by numerous national insurance companies.

After 2006, however, as the economy in general and the construction industry specifically began taking a downtown, Debtor's revenues began dropping precipitously. Builders began canceling projects, filing for bankruptcy, and/or terminating contracts. Debtor's revenue fell to $8 million in 2007, after reaching a peak of $23.2 million in 2005. The first seven months of 2009 have produced just $2.5 million in revenue.

Over the past 18 months, Debtor has received more than 30 bankruptcy notices from various builders across the country with whom it worked, numerous notifications that projects were being shut down, and several requests for refunds or reductions in contract scope and price. Longstanding projects have been abandoned and two builder clients have even tragically committed suicide.

Two large lawsuits have also affected Debtor's ability to weather the financial and economic storm. A $1.7 million judgment Debtor obtained against its largest competitor remains uncollected, as the competitor recently itself filed for Chapter 11 bankruptcy. Debtor's largest

subcontractor was awarded $3.6 million against Debtor by an arbitrator.  Debtor believes the award to be erroneous and inconsistent with the evidence, but currently lacks the necessary funds to contest the award.  Efforts to settle both of these cases by Mr. Luhr personally have failed.

Debtor's efforts to rebound from this financial peril have been significant and far-reaching.  Debtor has reduced its staff by 90% since 2006, re-negotiated internal contracts, and shuttered its Colorado training facility.  Debtor reached out to sixteen of its insurance company clients and offered to sell full, searchable copies of all data related to each client's insureds.  None of the clients accepted.

Debtor made active efforts to solicit potential buyers, reaching out to anyone who had shown interest in the company before.  Blog postings were made, a detailed prospectus was created, and Power Point presentations were forwarded to potential interested parties.  Mr. Luhr and Ms. Michaelis reached out to anyone who might have interest in acquiring the company, from disinterested venture capital entities and other investors, to insurance companies.  Market conditions have dissuaded any from pursuing a purchase.

Finally, in July 2009, detailed negotiations to purchase Debtor's assets began with Gary Elzweig, who had first indicated interest in acquiring the company a few years before.  A purchase price was eventually agreed upon, and an Asset Purchase Agreement was prepared.  Debtor believes that this sale of the assets represents the last and only remaining opportunity to provide continued services to Debtor's customers.  Until this sale is consummated, which consummation is expected to occur in October 2009, Debtor is unable to continue operations in the absence of bankruptcy protection.

Accordingly, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 14, 2009 ("Petition Date").  The primary reason for the filing was to preserve Debtor's going concern value, and to facilitate the sale of its assets.  Debtor's business is tied intimately to the construction sector of the economy, and its revenues have suffered a serious decline as a result of the equally significant economic reversals suffered throughout that sector of the economy.  These reversals have impacted both new business and the ability to collect fully on accounts receivable.  In the end, Debtor's depleted revenue stream has left it unable to meet the

117956

cash demands of its operations in the long - or even immediate - term.  Once the sale of assets is consummated, Debtor will turn its attention to determining how best to maximize the value of its non-operating assets - which include the seven figure judgment against the former competitor - and will either present a Chapter 11 Plan to achieve that purpose, or convert the case to a liquidation proceeding under Chapter 7.

**B.     Sales Procedure Order**

In connection with the Motion to Sell Assets Free and Clear of Liens, Claims, and Interests, Debtor has filed a Sales Procedure Order, which can be found at Exhibit 2 of the Exhibit Compendium filed contemporaneously herewith.  In that Sales Procedure Order there are numerous provisions related to bidding procedures, notice requirements, and other aspects of the putative sale.

### III. RELIEF REQUESTED

Debtor seeks through this motion approval of these provisions, in particular, an Order approving the bidding procedures, notice requirements, and all other provisions related to the sale that are contained in the Sales Procedure Order.

### IV. LEGAL ARGUMENT

The bases for the instant motion are two-fold.  First, approval of the bidding procedures, notice requirements, and other provisions contained in the Sales Procedure Order is required by the Asset Purchase Agreement.

Second, approval of the same is necessary to conserve judicial and party resources. Without a clearly established protocol for the sale of Debtor's assets, the distinct possibility exists that the parties (and purchaser, for that matter) may have disagreements regarding the structural details surrounding the sale.  Such disagreements could lead not only to a delay in the sale of Debtor's assets - and increased danger therefrom that the services Debtor must perform before and after the sale (as a different entity, of course) cannot be performed - but also would lead to motion practice and an unnecessary occupation of the Court's time and resources.

/ / /

/ / /

## V. CONCLUSION

WHEREFORE, Debtor respectfully requests that this Court enter an Order substantially in the form of Exhibit "A" attached hereto.

Date: <u>August 20, 2009</u>　　　　　　　　　　　　　**KEEHN & ASSOCIATES, APC**

By:   //s// L. Scott Keehn
　　　L. Scott Keehn
　　　[Proposed] Attorneys
　　　for Debtor and Debtor-in-Possession
　　　**Qualitybuilt.com, a California corporation**

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · TELECOPIER (619) 400-2201

# EXHIBIT A

**CSD 1001A** [11/15/04]
Name, Address, Telephone No. & I.D. No.
L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
**KEEHN & ASSOCIATES, APC**
402 W. Broadway, Suite 1210
San Diego, California 92101
Telephone: (619) 400-2200
[Proposed] Attorneys for Debtor and Debtor-in-Possession
Qualitybuilt.com, a California corporation

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

QUALITYBUILT.COM., a California corporation,

Debtor.

BANKRUPTCY NO. 09-12113-PB11

Date of Hearing:
Time of Hearing:
Name of Judge:

# ORDER ON
# FIRST DAY MOTION RE: APPROVAL OF PROVISIONS OF SALES PROCEDURE ORDER

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2) through __2__ with exhibits, if any, for a total of __2__ pages, is granted.  Motion/Application Docket Entry No. _____

//
//
//
//
//
//

DATED: _____

_____
Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

KEEHN & ASSOCIATES, APC
(Firm name)

By: //s// L. Scott Keehn
    Attorney for [X] Movant  [ ] Respondent

**CSD 1001A**/117978

`CSD 1001A` [11/15/04]**(Page 2)**
ORDER ON FIRST DAY MOTION RE: APPROVAL OF PROVISIONS OF SALES PROCEDURE ORDER
DEBTOR: Qualitybuilt.com, a California corporation                CASE NO: 09-12113-PB11

---

Upon consideration of the "First Day Motion by Debtor for Order For Order Approving All Procedures, Requirements, and other Provisions Set Forth in Sales Procedure Order (Ex. 2 to Exhibit Compendium)" (the "Motion") filed by Qualitybuilt.com. ("Debtor"); and it appearing that the Court has jurisdiction over the matter pursuant to 28 U.S.C. §§134 and 157; this Court having determined that the relief requested by Debtor is in the best interests of Debtor, its estate, and its creditors, and is essential to the continued preservation and maintenance of the value of Debtor's estate and assets; and it appearing that due notice of the Motion has been given to the United States Trustee, Debtor's secured creditors and the Debtor's twenty (20) largest unsecured creditors, and because of the urgency of the relief requested, no other or further notice need be given; and sufficient cause appearing;

IT IS HEREBY ORDERED THAT:

      1.      The relief requested by the Debtor in the Motion is granted;

      2.      The bidding procedures, notice requirements, and all other provisions set forth in the Sales Procedure Order, attached as Exhibit 2 to the Exhibit 2 Compendium, are hereby approved; and,

      3.      The Sale Procedure Order shall be completed to reflect the insertion of information and deadlines as ordered by the Court in open session at the hearing on this First Day Motion, and shall be separately submitted for immediate entry.