L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
**KEEHN & ASSOCIATES, APC**
402 W. Broadway, Suite 1210
San Diego, California 92101
Telephone: (619) 400-2200
Facsimile: (619) 400-2201
Email: scottk@keehnlaw.com; lesliek@keehnlaw.com

Attorneys for Debtor-in-Possession,
QUALITYBUILT.COM, a California corporation

**UNITED STATES BANKRUPTCY COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| In Re:<br><br>**QUALITYBUILT.COM**, a California corporation,<br><br>Debtor-in-Possession. | ) | Case No. 09-12113-PB11<br><br>Chapter 11<br><br>**MOTION FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, SUBJECT TO OVERBID; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: March 1, 2010<br>Hearing Time: 10:30 a.m.<br>Dept.: 4<br>Judge: The Honorable Peter W. Bowie |

QUALITYBUILT.COM, the Debtor-in-Possession ("Debtor") in the above-captioned bankruptcy case, hereby moves the Court for an order approving the sale of personal property of the estate, consisting of: (a) all of Debtor's operating assets, including all hardware, software, patents and trademarks needed to perform the executory contracts, and (b) all accounts receivable that are current or less than 90 days overdue on the date of the hearing where the sale is approved (collectively, the "Assets"). The Assets are all specifically identified and more particularly



KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200
TELECOPIER (619) 400-2201

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200
TELECOPIER (619) 400-2201

described in the "Asset Purchase Agreement" (the "Agreement").[1] Other than those warranties and representations that have been specifically made in Article 5 of the Agreement, the Purchased Assets are being sold without warranties or representations on an **"AS IS" "WHERE IS" AND "WITH ALL FAULTS"** basis but: (1) free and clear of all liens, claims, and encumbrances and (2) subject to overbid. Debtor also requests a determination that purchaser of Debtor's Property is a good faith purchaser entitled to the protections of 11 U.S.C. § 363(m). In support of this motion, Debtor represents as follows:[2]

1. On August 14, 2009, Debtor filed the voluntary petition herein under Title 11 U.S.C. Chapter 11 for relief under the United States Bankruptcy Code.

2. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Pursuant to 11 U.S.C. §§ 1101(1), 1107(a) and 1108, Debtor has been operating its business as a debtor-in-possession.

4. Debtor's current operations facility, located at 15330 Avenue of Science, San Diego, California (the "Building"), is in foreclosure due to Debtor's inability to meet the lease obligations, which in turn left its landlords/owners unable to make payments on the debt secured by the Building. That real property is owned by two Limited Liability Companies, each owned by an officer of Debtor (Stanley R. Luhr and Elizabeth R. Michaelis respectively). The Notice Of Default was recorded on or about November 19, 2009, and a foreclosure sale could occur as early as mid-march in 2010. The debt secured by the Building is over $332,000 in arrears, and the total encumbrance on the property is approximately $10 Million, which is approximately $3 Million in excess of the value of the property. Negotiations with the secured lender have been neither

---

[1] The Agreement and its Schedules are voluminous, and therefore are not attached to this Motion. They are in the Compendium of Exhibits filed concurrently herewith. A complete copy is available for viewing and downloading at www.keehnlaw.com. Terms that are capitalized in this Motion have the same meaning as set forth in the Agreement.

[2] The factual statements set forth below are supported by the Declarations of Stanley R. Luhr and Elizabeth R. Michaelis filed concurrently herewith, and/or the text of the Agreement.

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200
TELECOPIER (619) 400-2201

successful nor encouraging. The LLCs have no source of funds to cure the default, and the over-encumbered nature of the property appears to preclude any effective reorganization for them. Debtor is not making post-petition rent payments, and expects that the secured lender will foreclose as soon as possible.

5. In light of the inevitable foreclosure, Debtor has already moved much of its equipment to the only available facility, located in the State of Colorado, and co-owned by Debtor's Officers Stanley R. Luhr and Elizabeth R. Michaelis. Debtor is not paying, and will not in the future pay, rent to Mr. Luhr or Ms. Michaelis for the use of that facility unless specifically authorized by a future Order of the Bankruptcy Court.

6. Debtor has located a potential buyer for substantially all of its operating assets, including intangible property rights and Accounts Receivable that are current or less than 90 days old — Quality Built, LLC, a Delaware Limited Liability Company ("Buyer") — which has made an offer to purchase the Assets for $300,000 cash ("Cash Consideration"), payable at the Closing, plus the assumption of liabilities as follows:

| **Purchase Price [¶ 3.1]**[3] | **Quantified or Estimated Value** |
|---|---|
| Cash | $300,000 |
| Assumed liabilities [Sch. 1.1(c) & 2.1(a)][4] | $72,471 |
| **Subtotal - Quantified Value:** | **$372,471** |
| Assumption of Specified Executory Contracts [Sch. 1.1(d)] | Estimated to eliminate $6 - 7 Million of Breach of Contract claims resulting from Debtor's inability to perform the contracts |
| **TOTAL PROJECTED VALUE TO ESTATE:** | **$6,372,471 - $7,372,471** |

[3] References are to Sections and Paragraphs of the Asset Purchase Agreement and/or its Schedules.

[4] Payables incurred to generate accounts receivable that are part of the Purchased Assets.

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200
TELECOPIER (619) 400-2201

| **Purchased Assets [¶ 1.1 (a) - (k)]** |
| --- |
| Intellectual Property [Sch. 1.1 (a)] needed to perform Assumed Contracts |
| Inventory, Tools and Supplies [Sch. 1.1 (b)] needed to perform Assumed Contracts |
| Accounts Receivable that are current or less than 90 days overdue (Estimated Net Collectable Value $191,100) [Sch. 1.1 (c)] |
| Work in Process and Executory Contracts [Sch. 1.1 (d)] |
| Sales and Marketing Materials Relating to the Purchased Assets [¶ 1.1 (e)] |
| Billing Information and Customer Lists Relating to the Purchased Assets [¶ 1.1 (f)] |
| Supplier Information and Supplier Lists Relating to the Purchased Assets [¶ 1.1 (g)] |
| All Books and Records Relating to the Purchased Assets [¶ 1.1 (h)] |
| I.T. Systems [Sch. 1.1 (I)] |
| Litigation Rights and Causes of Action Relating to the Purchased Assets [¶ 1.1 (j)][5] |
| Insurance Rights Relating to the Purchased Assets [¶ 1.1 (k)] |

| **Waivable Conditions to Buyer's Obligation to Close** |
| --- |
| Execution of employment and non-compete agreements with Debtor's Officers Stan Luhr and Elizabeth R. Michaelis. [¶ 7.1 (j)] Exhibit C to Agreement. |
| Execution of real property lease for an operations facility in the State of Colorado co-owned by Debtor's Officers Stan Luhr and Elizabeth R. Michaelis. [¶ 7.1 (I)] Exhibit B to Agreement. |

7. Debtor has pursued 34 other potential buyers, and received a few offers which were not nearly as beneficial as the offer of the present Buyer. After taking into consideration prior offers, Debtor believes that selling the Assets to Buyer would be in the best interest of the estate.[6] Other competing bids may be made by other interested parties.

8. The decision to enter into and perform the sale transaction as provided in the Agreement reflects a sound exercise of the Debtor's business judgement.

---

[5] Does not include the $1.7 Million Judgment against West Coast Property Consultants, Inc., or other judgments obtained pre-petition.

[6] See attached Declarations in support of this Motion.

9. Debtor requests that this sale be conducted in Court at the hearing to consider approval of this Motion; and be subject to appropriate overbid procedures, as specified herein and/or as may otherwise be approved by the Court.

**PROPOSED OVERBID PROCEDURE**

Debtor proposes the following Sale and Bidding Procedures:

A. Purchase Price. The offer to purchase now pending approval by the Court seeks to sell the Assets for the Closing Consideration of Three Hundred Thousand Dollars ($300,000.00) of cash, and the assumption of certain liabilities (estimated at approximately $72,471) as set forth in the Agreement. If there are no "Qualified Bidders" at the time of the 363 Hearing, then Debtor will move the Court to approve the sale to Buyer (as defined in the Agreement) upon the terms of the Agreement, subject to such technical, curative or other amendments as may be approved by the Bankruptcy Court during the course of the 363 Hearing. If Qualified Bidders do appear at the 363 Hearing, then Debtor will request that the Bankruptcy Court conduct an auction as part of the 363 Hearing, and designate the successful bidder (and any back-up bidders) as part of the Sale Order.

B. Qualified Bidders. The Buyer identified in the Agreement is a Qualified Bidder. Qualified Bidders must all agree to be bound by all of the terms of the Agreement. The auction shall only address the amount of the Cash Consideration being paid under the Agreement. Persons or other entities may become a Qualified Bidder only by:

(1) Making a timely "Overbid Deposit" in the amount and manner set forth in Paragraph C below;

(2) Making a general appearance through an authorized representative at the 363 Hearing to participate fully as a party-in-interest in the 363 Hearing and sale process; and,

(3) Confirming, by a previously-filed declaration that: they understand that by bidding they are agreeing to be bound by all of the terms and conditions of the Agreement; and the bid submitted in the over-bidding

/ / /

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200
TELECOPIER (619) 400-2201

shall be stated as the dollar amount of the Cash Consideration set forth in Paragraph 3.1(a) of the Agreement.

C. Overbid Deposit. Any party wishing to submit an overbid at the 363 Hearing shall deliver to Debtor's counsel a cashier's check drawn on a bank located in the State of California, and made payable to "Keehn & Associates, APC Client Trust Account" in the amount of Sixty Thousand Dollars ($60,000.00) ("Overbid Deposit") and the Bidder's Confirmation described in paragraph D, below at least two (2) business days prior to the 363 Hearing. Any party failing to comply with this provision shall be barred from participating in the auction. The Overbid Deposit and Bidder's Confirmation shall be delivered to:

L. Scott Keehn, Esq.
Leslie F. Keehn, Esq.
KEEHN & ASSOCIATES, APC
402 W. Broadway, Suite 1210
San Diego, CA 92101

The Overbid Deposit shall be returned to any Qualified Bidder that bidder is not the Successful Bidder at the 363 Sale. However, the Overbid Deposit becomes non-refundable upon the overbidder's designation as the Successful Bidder; and said Overbid Deposit shall be applied as partial satisfaction of the Cash Consideration.

D. Due Diligence. Each potential bidder must conduct their own due diligence related to this transaction prior to the 363 Hearing. Each party wishing to bid at the 363 Hearing shall execute and deliver to Debtor's Counsel a written statement, signed under penalty of perjury, advising Debtor's Counsel and the Court that: (1) such potential bidder has conducted all the diligence such potential bidder desires to conduct, and is satisfied with the same; (2) such potential bidder agrees to purchase the Assets on the same terms and conditions provided in the Agreement (subject to any variations to the Agreement that may be required by the Court or permitted by Debtor in its reasonable judgment. Such variations shall be disclosed prior to or during the conduct of the 363 Hearing); (3) such potential bidder acknowledges and agrees that, except for the representations and warranties made in Article 5 of the Agreement, the sale of the Assets is made on an "AS IS" "WHERE IS" and "WITH ALL FAULTS" basis with no representations or warranties of any kind, expressed or implied; and (4) such potential bidder

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200
TELECOPIER (619) 400-2201

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200
TELECOPIER (619) 400-2201

agrees to be bound by the Agreement with the Cash Consideration as set by the Court, and provides evidence that is satisfactory to Seller that bidder has the ability to pay such Cash Consideration not later than 30 days following the conclusion of the 363 Hearing ("Bidder's Confirmation"). The Bidder's Confirmation must be delivered, together with the Overbid Deposit, in accordance with the provisions of paragraph C, above.

E. Sale Structure. Debtor will offer for sale all of the Purchased Assets (as defined in ¶ 1.1 of the Agreement), subject to auction bidding at the time of the 363 Hearing. If there are Qualified Bidders present at the 363 Hearing, then Auction bidding will be held in open court at the 363 Hearing, and shall be subject to the Court's approval of the results of such auction and/or supplemental rulings at the 363 Hearing; and/or modification of terms of sale by the Court.

F. Minimum Overbid Amount and Minimum Incremental Bid Amount. The Court shall establish the "Minimum Overbid Amount" which shall in no event be less than Sixty Thousand Dollars ($60,000.00) for the first overbid. Thereafter, the "Minimum Incremental Bid Amount" for each subsequent bid shall be Ten Thousand Dollars ($10,000.00) per bid.

G. Objections. Any objections to this Sale Motion shall be served on Debtor's counsel not later than fourteen (14) days after personal service of the notice of this Sale Motion. If served by mail, opposing party shall have seventeen (17) days after the service of this Sale Motion to serve any opposition. Any reply thereto must be filed and received by the adverse party the earlier of seven (7) days after service of the opposition, or three (3) days prior to the date of the hearing. Service of the reply may be by facsimile upon prior agreement of the parties or upon court approval. No response to a reply shall be permitted without an order from this Court.

H. Good Faith Finding. The Agreement requires, and Debtor requests, that the Court make a good faith finding under Section 363(m) of the Bankruptcy Code at the conclusion of the 363 Hearing.

I. Additional Procedures. The Court may establish such other procedures as may be necessary or desirable for the orderly administration of Debtor's estate.

/ / /

/ / /

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200
TELECOPIER (619) 400-2201

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. DEBTOR IS FUNCTIONING AS DEBTOR-IN-POSSESSION AND TRUSTEE

In Chapter 11 cases, normally there is no trustee. Instead, there is only Debtor, functioning as debtor-in-possession, with authority both to run its business, and to exercise some of the functions of a Trustee (e.g., the authority to use, sell or lease property, borrow money, and assume or reject executory contracts).[7] Specifically, 11 U.S.C. § 1107 provides:

> Subject to any limitations on a trustee serving in a case under this chapter [11 USCS §§ 1101 et seq.], and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a) (2), (3), and (4) of this title [11 USCS §§ 1106(a) (2), (3), and (4)], of a trustee serving in a case under this chapter [11 USCS §§ 1101 et seq.].[8]

Here, Debtor has been operating its business as a debtor-in-possession since the Petition was filed herein.

### B. THIS COURT MAY AUTHORIZE THE SALE OF ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS PURSUANT TO § 363(b) (1)

11 U.S.C.§ 363(b)(1) provides, in pertinent part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . " *Property of the estate*, as defined in 11 U.S.C. § 541(a), includes "all legal or equitable interests of the debtor in property as of the commencement of the case," regardless of where the property is located, or by whom it is held.

This Court has extremely broad discretion and "*wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)*.[9] The standard to be applied in exercising that discretion is whether such a sale is in the

---

[7] *See*, 11 U.S.C. § 1107, and §1108.

[8] 11 U.S.C. § 1107(a).

[9] *In re Ancor Exploration Co.*, 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983); *see also*, *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d. Cir. 1983); *In re Coastal Cable T.V., Inc.*, 24 B.R. 609, 611 (Bankr. 1st Cir. 1982); rev. on other grounds, 709 F.2d 762 (1st Cir. 1983); *In re Baldwin United Corp.*, 43 B.R. 888, 905 (Bankr. S.D. Ohio 1984).



119166/5537.01

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200
TELECOPIER (619) 400-2201

best interest of the estate, and whether the price is fair and reasonable.[10] A trustee (debtor) is given substantial deference and discretion in this regard.[11]

In *Lionel Corp.*, supra, the court held that "*there must be some articulated business justification*" for the sale in order to justify its approval.[12] Further, the court stated that its discretionary power could be used to further the interests of the debtor, its creditors, and its equity security holders.[13] The court specifically rejected prior Second Circuit authority under the Bankruptcy Act which mandated a showing of an emergency before the court would approve a sale outside the ordinary course of business.[14] The *Lionel* court noted that in enacting the Code, Congress had dropped the requirement that the approval of a sale outside the ordinary course of business depends upon a showing of cause because the Second Circuit interpreted Congress' change to reflect an intent to allow sales under Section 363(b) more readily than sales under the Act.[15] Accordingly, the trustee (debtor) must merely demonstrate a good business reason for selling its property.[16]

Here, Debtor has a sound business reason for selling the Assets as a going concern pursuant to the Agreement because the sale will maximize the value of Debtor's Purchased Assets. That value has three components: (1) cash in the amount of $300,000; (2) assumed liabilities quantified at $72,471; and assumed and avoided unsecured claims estimated between $6 Million and $7 Million. Together, those three components result in a total projected value between

---

[10] *See*, *In re Canyon Partnership*, 55 B.R. 520, 524 - 526 (Bankr. S.D.Cal. 1985).

[11] *Id.* at 524.

[12] *In re Lionel Corp.*, supra, 722 F.2d at 1070.

[13] *In re Lionel Corp.*, supra, 722 F.2d at 1071.

[14] *In re Lionel Corp.*, supra, 722 F.2d at 1069.

[15] *In re Lionel Corp.*, supra, 722 F.2d at 1069.

[16] *In re Lionel Corp.*, supra, 722 F.2d at 1069; see also, *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) ("a bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action").

$6,372,471 and $7,372,471. As a result, the distributions to unsecured creditors of Debtor's estate will be significantly enhanced by this transaction.

This transaction immediately puts Debtor's operating assets in the hands of a new entity that can make the assets productive in a way that will maximize distributions to remaining creditors, which is something Debtor cannot do as Debtor-in-Possession. As shown on Debtor's Operating Report for December 2009, Debtor suffered a total loss of $58,283 in December 2009, and cumulative post-petition losses of $192,287. Thus, except as necessary to facilitate an asset sale, continued operations by Debtor are neither within Debtor's capability, nor in the best interests of its creditors. This sale transaction needs to proceed to consummation with all deliberate dispatch if the best interests of the estate are to be served. That point underscores the legitimacy of Debtor's business purpose.

Currently, Debtor does not have the working capital to perform, to conclusion, the contracts that will be assumed in the sale, and the failure to perform them will result in claims against Debtor ranging between $6,000,000 and $7,000,000. Therefore, Debtor proposes this sale of the Assets as an operating business, and reasonably believes that the proposed sale is both justified under the circumstances, and in the best interest of the estate and its creditors.

**C. THE SALE CONSTITUTES A "GOOD FAITH" PURCHASE**

Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

In other words, if a buyer purchases property of the bankruptcy estate in good faith (with "good faith" being determined according to the facts of each individual case), the order authorizing the sale of such property may not be reversed or modified after consummation of the sale, and any appeal of the bankruptcy court's order will be dismissed as moot.[17] In this instance,

[17] *See, In re Stadium Management Corp.*, 895 F.2d 845, 847-848 (1st Cir. 1990).

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200
TELECOPIER (619) 400-2201

Buyer is making an offer in good faith for purchase of the Assets in an arm's length transaction. Accordingly, Debtor submits, and requests the Court to find, that the proposed sale constitutes a good faith purchase pursuant to 11 U.S.C. § 363(m).

**D. DEBTOR WISHES TO SELL ITS ASSETS FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363(f)**

Bankruptcy Code Section 363(f) authorizes the sale of assets, free and clear of any interests in certain circumstances. Specifically, Section 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if--
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Here, Elizabeth R. Michaelis is the only Secured Creditor whose lien claim is impacted by this Motion:

| CREDITOR | NATURE OF COLLATERAL | AMOUNT OF CLAIM |
|---|---|---|
| Elizabeth R. Michaelis | UCC-1 Blanket Lien (Jr.) | $40,000.00 |

Ms. Michaelis has consented to the sale free and clear of her lien.[18] Thus, Section 363(f)(2) authorizes this sale free and clear of her lien.

**<u>CONCLUSION</u>**

Based on all of the foregoing, Debtor requests that the Court conduct and approve the sale of the Assets in accordance with the Sale and Bidding Procedures set forth herein; find that the

/ / /

/ / /

/ / /

[18] *See*, Declaration of Elizabeth R. Michaelis filed concurrently herewith, ¶ 14.

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200
TELECOPIER (619) 400-2201

purchaser is a good faith purchaser under 11 U.S.C. § 363(m); and authorize the sale of the Assets free and clear of all liens, claims and encumbrances.

Date: January 29, 2010

**KEEHN & ASSOCIATES**
A Professional Corporation

By: //s// L. Scott Keehn
L. Scott Keehn
Leslie F. Keehn
Attorneys for Debtor-in-Possession
**QUALITYBUILT.COM, a California corporation**

