GARRICK A. HOLLANDER -- State Bar No. 166316
ghollander@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

Attorneys for Quality Built, LLC,
Stalking Horse Bidder

# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

In re

QUALITYBUILT.COM, a California corporation,

      Debtor and
      Debtor-in-Possession.

Case No. 09-12113-PB11

Chapter 11 Proceeding

**DECLARATION OF GARY ELZWEIG IN SUPPORT OF DEBTOR'S MOTION FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, SUBJECT TO OVERBID**

DATE:    March 1, 2010
TIME:    10:30 a.m.
DEPT.:   4
JUDGE:  The Honorable Peter W. Bowie

I, Gary Elzweig, hereby declare and state as follows:

1. I am the managing and currently sole member of Quality Built, LLC ("Quality"), the proposed purchaser of substantially all assets of QualityBuilt.com ("Debtor").

2. This Declaration is made in support of the Debtor's Motion for Order Approving Sale of Property of the Estate Free and Clear of Liens, Claims and Encumbrances, Subject to Overbid ("Sale Motion").

3. I have personal knowledge of the facts set forth herein, and if called upon to testify, could and would do so competently and truthfully.

4. In 1977, I obtained a Bachelors of Science degree in Civil Engineering and Engineering Mechanics from Columbia University, School of Engineering and Applied Sciences. I have extensive knowledge and expertise in the construction quality assurance industries, and have significant success operating business in these and other industries.

    a. I am a Registered Professional Engineer in Florida and Colorado, with almost thirty years of experience in the fields of engineering, design and construction. I have satisfied the requirements for registration by the Structural Engineering Certification Board (SECB), and as a State of Florida Special Inspector, Standard Building Inspector and Radon Measurement Specialist.

    b. For the last twenty-five years, I have successfully managed, built, and grown exponentially specialty engineering and other businesses, including those in the construction quality assurance industries. In 2002, for example, I started Code Administration, Plans Review & Inspection Services, Inc. ("CAPRI"), a structural engineering, inspection, and construction materials testing firm. In three years, I grew CAPRI to a company generating annual revenues of more than $50 million with 16 offices and more than 400 employees nationwide. In 2008, I sold CAPRI for a significant purchase price commensurate with market valuations for companies of this size in this industry.

    c. I serve and have served as a member and chairman of numerous committees and boards, including Broward County Board of Rules & Appeals, Governor's Building

Construction Permitting & Inspection Task Force, and Development Process Advisory Committee, to name a few.

5. I am not nor have I ever served as a director, officer or employee of the Debtor. I do not have nor have I ever held any interest in the Debtor or had any control over the Debtor. In fact, except for CAPRI, which was merely a competitor of the Debtor's, neither I nor any member of any company in which I hold an interest have or to my knowledge ever had any connection to the Debtor, its officers, directors, or any other insiders of the Debtor.

6. Quality's proposed purchase of the Debtor's assets was negotiated with the assistance of counsel (Proskauer Rose LLP for Quality; and Keehn & Associates for the Debtor) in an arm's-length transaction, without the existence of any self-dealing, manipulation, collusive bidding, fraud, or other improper behavior.

7. Quality was formed for the purpose of acquiring and operating the Debtor's business. I purposely chose the name Quality Built, LLC because I wanted to maintain a seamless transition in the transaction, and believed that the company's value and viability going forward would benefit by keeping the names of the new owner similar to the prior owner. I have engaged in numerous corporate sale and purchase transactions, and this is very common practice.

8. Quality will be capitalized initially with $500,000, $300,000 of which will come from me personally, and the remaining $200,000 from other high net worth individuals who have committed to contribute the requisite funds for the initial capitalization to purchase the assets and subsequently operate the business post-closing. The collective net worth of the eight investors in Quality is in excess of $100,000,000.00, and the collective liquid net worth is well in excess of the initial capitalization required for this deal. Quality has already sent capital calls to its seven other investors to consummate this transaction. While I am confident that the monies will be funded by the investors, if, for some unforeseen and unlikely event that a member does not meet his capital call obligation for the initial capitalization, I am prepared to personally contribute such funds necessary to initially capitalize Quality to consummate the proposed transaction and operate the business immediately following the closing. Based on my current financial position, I am fully able to fund completely the full amount of the initial capitalization required.

9. None of the anticipated members investing cash into Quality have any interest in or connection to the Debtor, its officers, directors, or any other insiders of the Debtor.

10. As an inducement to attract and retain Elizabeth Michaelis and Stan Luhr to serve as President and Chief Technical Officer, respectively, of Quality, Quality has offered these individuals grants of 5% of the common equity interests outstanding in Quality in restricted stock subject to customary forfeiture and repurchase provisions and restrictive covenants. I will serve as Chairman of Quality, and Brian Kramer, a very successful seasoned engineering executive licensed as a Professional Engineer in the State of California with Master of Business Administration, will serve as Chief Executive Officer of Quality. As members holding the majority interest in quality (70%), Mr. Kramer and I will have control over Quality and its operations.

11. Quality's proposed offer to the Debtor's existing officers is very common for a purchase transaction of this type. In fact, the going concern value of a company is often driven, in large part, by the company's existing management, and the retention of such management is often a critical condition to the purchase. I believe that Ms. Michaelis and Mr. Luhr are critical to the success of Quality's business going forward, and that the proposed structure is necessary to retain such individuals. Accordingly, the proposed retention and related structure is a necessary condition to Quality's willingness to proceed with this transaction.

12. The purchase price that Quality has agreed to pay for the Debtor's assets has decreased from the offer Quality had originally made at the beginning of this case because the value of the Debtor's business has correspondingly decreased since the beginning of the case. Having purchased and sold many businesses over the last twenty five years, I am very familiar with valuations of companies and the value drivers behind them. The value of a company is based on the present value of discounted cash flows, applying a market discount rate. As a practical matter, this concept translates to valuations being determined by the product of a company's EBITDA or Gross Sales and a valuation multiple, which varies by industry and fluctuates based on market and other conditions, including quality of EBITDA, decreasing trends, etc. In this case, the Debtor's EBITDA is non-existent and the Gross Sales has decreased since Quality's original

offer. Moreover, valuation multiples for deals in all industries have also decreased in light of the economy and the inflated multiples paid by buyers over the last several years. Based on the circumstances of this case, the value of the Debtor's business has decreased, as reflected in Quality's current purchase offer.

Quality will not be assuming any debt owing by the Debtor, but rather only assuming certain contracts for the continuance of service contracts with existing customers of the Debtor. Based on the management experience and expertise in the construction quality assurance industry of and financial backing behind Quality, I am confident that Quality will be able to continue performing under the executory contracts to be assumed and assigned as identified in the Sale Motion.

13. I have reviewed the objections to the Sale Motion, and based on the comments, Quality is willing to revise its requested minimum overbid to $30,000, so long as Quality is entitled to receive a break-up fee of $25,000 ("Break-up Fee") in the event Quality is not the highest bidder. The Debtor previously agreed to pay a $50,000 break-up fee to Quality. Quality believes that the $25,000 Break-up Fee is more than reasonable because it:

a. represents less than 25% of the more than $100,000 of actual expenses incurred by Quality in pursuing this deal, including negotiating and documenting the asset purchase agreement, from which all bidders benefit;

b. represents half of what the Debtor, in its business judgment, had negotiated and agreed to with Quality;

c. encouraged the making of Quality's initial "stalking horse" offer at a point where there were no competing bidders;

d. may discourage a bidding strategy designed to hold back competitive bids until late in the process;

e. aided the Debtor in negotiating an initial bid that may be the highest bid received by the Debtor;

/ / /

MAINDOCS-#140536-v2-Qualitybuilt_com_Elzweig_Dec

f.  has enhanced the bidding process by creating momentum towards the consummation of a sale, which is otherwise likely not to occur and lead to a liquidation.

I declare under penalty of perjury under the laws of the state of California and the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 19th day of February 2010, in Plantation, Florida.

*/s/ Gary Elzweig*

Gary Elzweig

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive., 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: DECLARATION OF GARY ELZWEIG IN SUPPORT OF DEBTOR'S MOTION FOR ORDER APPROVING SALE OF PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, SUBJECT TO OVERBID will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On February 19, 2010 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Michael D. Breslauer    mbreslauer@swsslaw.com, wyones@swsslaw.com **Counsel to Coast to Coast, Objecting Party**
- Peter L. Duncan    peterd@psdslaw.com, vickig@psdslaw.com
- Haeji Hong    Haeji.Hong@usdoj.gov, USTP.Region15@usdoj.gov;shannon.m.vencill@usdoj.gov;tiffany.l.carroll@usdoj.gov
- Jay Hurst    Jay.Hurst@oag.state.tx.us, sherri.simpson@oag.state.tx.us
- L. Scott Keehn    scottk@keehnlaw.com, **Debtor's Counsel**
- scottk@keehnlaw.com;cynthial@keehnlaw.com;lisak@keehnlaw.com;lesliek@keehnlaw.com;taniab@keehnlaw.com;MatthewW@keehnlaw.com
- Dean Rallis    drallis@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com
- Gerald N. Sims    jerrys@psdslaw.com
- United States Trustee    ustp.region15@usdoj.gov

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On February 19, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

US Trustee's Office – **Objecting Party**
Haeji Hong, Esq.
402 West Broadway, Suite 600
San Diego, CA 92101

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 19, 2010 | Susan Connor | |
|---|---|---|
| *Date* | *Type Name* | *Signature* |